ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
ROYE ZUR, State Bar No. 273875
  *rzur@elkinskalt.com*
LAUREN N. GANS, State Bar No. 247542
  *lgans@elkinskalt.com*
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Nicole A. Sullivan (pro hac vice)
  *sullivann@whiteandwilliams.com*
Thomas E. Butler (pro hac vice)
  *butlert@whiteandwilliams.com*
WHITE AND WILLIAMS LLP
7 Times Square - Suite 2900
New York, New York 10036
Telephone: (212) 631-4420

*Attorneys for Creditor Multiple Energy
Technologies, LLC*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>SETH HALDANE CASDEN,<br><br>    Debtor. | Case No. 2:23-bk-16904-BR<br><br>Chapter 11<br><br>Hon. Barry Russell<br><br>**NOTICE OF MOTION AND MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE, OR ALTERNATIVELY, CONVERSION TO CHAPTER 7; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Declarations of Nicole A. Sullivan and Roye Zur filed concurrently herewith*]<br><br>**Hearing Date & Time:**<br>Date:    November 4, 2025<br>Time:    10:00 a.m.<br>Place:    Courtroom 1668<br>        255 E. Temple St.<br>        Los Angeles, CA 90012 |

5727930

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE,**

2  **ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that on November 4, 2025, at 10:00 a.m., in Courtroom 1668 of

4  the above-entitled Court, located at the Roybal Federal Building, 255 East Temple Street, Los

5  Angeles, CA 90012, Multiple Energy Technologies, LLC ("MET") will, and hereby does, move for

6  entry of an order appointing a Chapter 11 trustee or, in the alternative, converting the above-

7  captioned case to Chapter 7 (the "Motion").

8      This Motion is based upon this Notice and Motion, the accompanying Memorandum of

9  Points and Authorities, the Declarations of Nicole A. Sullivan and Roye Zur ("Sullivan Decl." and

10  "Zur Decl.", respectively) and all exhibits appended thereto, the entire record in this case, the

11  statements, arguments, and representations of counsel to be made at the hearing on the Motion and

12  any other evidence properly presented to the Court at or prior to the hearing on the Motion.

13      **PLEASE TAKE FURTHER NOTICE** that the Motion is being heard on regular notice

14  pursuant to Local Bankruptcy Rule 9013-1. Local Bankruptcy Rule 9013-1(f) requires that any

15  response to the Motion must be filed and served at least 14 days prior to the hearing on the Motion.

16  Additionally, Local Bankruptcy Rule 9013-1(h) provides that the Court may deem that the failure

17  to timely file and serve an opposition or response constitutes consent to the relief requested in the

18  Motion.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

5727930

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

**PLEASE TAKE FURTHER NOTICE** that, if responsive pleadings, points and authorities, declarations and other documentary evidence in response to the Motion are filed, they should be served on: (i) counsel for MET, whose name and address are set forth in the upper, lefthand corner of the first page of this Notice; and (ii) the Office of the United States Trustee at 915 Wilshire Boulevard, Suite 1850, Los Angeles, CA 90017.

DATED:  October 8, 2025                    WHITE AND WILLIAMS LLP


By:      /s/ Nicole A. Sullivan
         NICOLE A. SULLIVAN (pro hac vice)
         THOMAS E. BUTLER (pro hac vice)
         Attorneys for Creditor Multiple Energy
         Technologies, LLC

DATED:  October 8, 2025                    ELKINS KALT WEINTRAUB REUBEN
                                           GARTSIDE LLP


By:      /s/ Roye Zur
         ROYE ZUR
         LAUREN GANS
         Attorneys for Creditor Multiple Energy
         Technologies, LLC

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**TABLE OF CONTENTS**

Elkins Kalt Weintraub Reuben Gartside LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Page

I.      PRELIMINARY STATEMENT .................................................................9

II.     STATEMENT OF FACTS.......................................................................11

        A.      Casden Loses Tens of Thousands of Dollars Every Month, Resulting in the
                Administrative Insolvency of the Estate ......................................11

        B.      Casden's Use of his Trust Pre-Petition .......................................13

        C.      Debtor's Use of Trust Post-Petition, Including Unauthorized and
                Undisclosed Post-Petition Transfers by Casden..............................14

                1.      Casden's Use of the Trust to Pay Administrative Claims Without
                        Prior Disclosure to or Approval by the Court ......................14

                2.      Casden's Use of the Trust to Make Unauthorized and Undisclosed
                        Post-Petition Transfers ............................................15

        D.      MET's Attempts to Meet and Confer with Casden's Counsel...................16

III.    ARGUMENT ..................................................................................16

        A.      There is "Cause" to Remove Casden as a Debtor in Possession...............16

                1.      Casden's Post-Petition Unauthorized Transfers Mandate Removal of
                        Casden as a Debtor in Possession ..................................17

                2.      The Estate is Administratively Insolvent with Continuing
                        Diminution of the Estate and No Likelihood of Rehabilitation ......19

                3.      Casden Has Grossly Mismanaged the Estate ..........................21

                4.      The Trust is Used to Pay Creditors and Turnover of the Trust
                        Corpus Should Be Pursued by an Independent Trustee ................25

        B.      Casden's Bad Faith Constitutes Independent Cause Under 11 U.S.C. § 1112 ......27

IV.     CONCLUSION ...............................................................................31

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*3685 San Fernando Lenders, LLC v. Cross Equities Partners, LLC (In re USA Commer. Mortg. Co.)*,
452 Fed. App'x 715 (9th Cir. 2011) .................................................................. 19

*Estate of Blardone v. McConnico, Tex.Civ.App.*
604 S.W.2d 278 (1980) ...................................................................................... 26

*Burgess v. Williams*,
2005 U.S. Dist. LEXIS 42099 (C.D. Cal. Jan. 14, 2005.)............................... 27, 28

*In re Canion*,
129 B.R. 465 (Bankr. S.D. Tex. 1989) ............................................................. 22

*In re Carrington*,
710 F. Supp. 3d 248 (S.D.N.Y. 2024) ............................................................. 18

*CBS, Inc. v. Folks (In re Folks)*,
211 B.R. 378 (9th Cir. BAP 1997) ................................................................... 27

*Cedar Shore, Inc. v. Mueller (In re Cedar Shore Resort, Inc.)*,
25 F. 3d. 375 (8th Cir. 2000)............................................................................ 27

*In re Creekside Senior Apts., L.P.*,
489 B.R. 51 (6th Cir. BAP 2013) ..................................................................... 20

*In re Devers*,
759 F.2d 751 (9th Cir. 1985)............................................................................ 17

*In re Dodart*,
577 B.R. 406 (Bankr. D. Utah 2017) ............................................................... 25

*In re Grasso*,
No. 12-1063-mdc, 2012 WL 13168488 (Bankr. S.D.N.Y. Oct. 16, 2012) ............ 9, 18, 22

*Hassen Imps. P'ship v. City of W. Covina (In re Hassen Imps. P'ship)*,
No. CC-13-1019-KiPaD, 2013 Bankr. LEXIS 3870 (9th Cir. BAP Aug. 19, 2013)........................................................................................................... 21

*In re Hoyle*,
2013 WL 210254 (Bankr. D. Idaho Jan. 17, 2013) ......................................... 18

*In re Intercat, Inc.*,
247 B.R. 911 (Bankr. S.D. Ga. 2000) .............................................................. 9

*J.B.G. v. P.J.G.*,
   286 A.2d 256, 1971 Del. Ch. LEXIS 150 (Del. Ch. 1971) ........................................ 26

*Jiajie Zhu v. Jing Li*,
   2024 U.S. Dist. LEXIS 45552, 2024 WL 1122422 (N.D. Cal. Mar. 14, 2024) ..................... 21

*In re Kaplan*,
   97 B.R. 572 (9th Cir. BAP 1989) .................................................................. 25

*In re Karum Group, Inc.*,
   66 B.R. 436 (Bankr. W.D. Wash. 1986) ........................................................... 30

*Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*
   779 F. 2d 168 (5th Cir. 1986) ...................................................................... 27

*In re Loop Corp. v. U.S. Trustee*,
   379 F.3d 511 (8th Cir. 2004) ....................................................................... 19

*Mahmood v. Khatib*,
   2017 Bankr. LEXIS 724 (9th Cir. Mar. 17, 2017) ................................................. 29

*Malloy v. Morrison (In re Morrison)*,
   2010 Bankr. LEXIS 4326 (Bankr. N. Okla.) ...................................................... 25

*Margitan v. Hanna*,
   EW-18-1071-FLS, 2018 Bankr. LEXIS 3608 (9th Cir. BAP Nov. 13, 2018) .................... 17

*Marsch v. Marsch (In re Marsch)*,
   36 F.3d 825 (9th Cir. 1994) ........................................................................ 27

*Marshall v. Marshall (In re Marshall)*,
   403 B.R. 668 (C.D. Cal. 2009) ................................................................. 27, 28

*In re Marshall*,
   721 F.3d at 1048 ..................................................................................... 27

*In re Mense*,
   509 B.R. 269 (Bankr. C.D. Cal. 2014) ............................................. 10, 19, 21, 24

*In re Original IFPC Shareholders, Inc.*,
   317 B.R. 738 (Bankr. N.D. Ill. 2004) ............................................................. 20

*In re Pasadena Adult Residential Care, Inc.*,
   2015 Bankr LEXIS 3601 (Bankr. C.D. Cal. Oct. 23, 2015) .................................. 16, 19

*In re Perez*,
   30 F.3d 1209 (9th Cir. 1994) ...................................................................... 21

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

5727930

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

*In re Pinnacle Foods of Cal. LLC*,
  Nos. 24-11015-B-11, MB-4, VP-2, 24-11016-B-11, 24-11017-B-11, 2025 LX
  343529 (Bankr. E.D. Cal. Mar. 27, 2025) ................................................................. 21

*In re PRS Ins. Grp., Inc.*,
  274 B.R. 381 (Bankr. D. Del. 2001) ........................................................................... 9

*Rand v. Porsche Fin. Servs.*,
  BAP No. AZ-10-1160-BaPaJu; 2010 Bankr. LEXIS 5076, at *31-32, n. 14 (9th
  Cir. BAP Dec. 7, 2010) .............................................................................................. 17

*In re Rey*,
  2006 WL 2457435 (Bankr. N.D. Ill. Aug. 21, 2006) .......................................... 10, 22

*In re Sillerman*,
  605 B.R. 631 (Bankr. S.D.N.Y. 2019) ....................................................................... 19

*In re Smith*,
  58 B.R. 448 (Bankr. W.D. Ky.1986) ........................................................................... 30

*St. Paul Self Stor. LP v. Port Auth. (In re St. Paul Self Stor. LP)*,
  185 B.R. 580 (9th Cir. BAP 1995) ............................................................................ 29

*In Re STL Carbon Corp.*,
  200 F.3d 154 (3d Cir. 1999) ...................................................................................... 28

*Sullivan v. Harnisch (In re Sullivan)*,
  522 B.R. 604 (9th Cir. BAP Dec. 12, 2014) .............................................................. 28

*Sunshine Group, LLC v. City of Dana Point (In re Sunshine Group, LLC)*,
  2020 Bankr. LEXIS 1000 (9th Cir. April 10, 2020) .................................................. 28

*In re Sylmar Plaza, LP.*,
  314 F. 3d 1070 (9th Cir. 2002) ................................................................................. 28

*Ullman v. Cameron*,
  186 N.Y. 339 (1906) .................................................................................................. 26

*In re V. Savino Oil & Heating Co., Inc.*,
  99 B.R. 518 (Bankr. E.D.N.Y. 1989) ......................................................................... 10

*In re Vallambrosa Holdings, LLC*,
  419 B.R. 81 (Bankr. S.D. Ga. 2009) ......................................................................... 20

*In re Velde*,
  No. 18-11651-A-11, 2018 Bankr. LEXIS 2810 (Bankr. E.D. Cal. Sept. 12,
  2018).................................................................................................................... 16, 17

*In re Wally Findlay Galleries (New York), Inc.*,
  36 B.R. 849 (Bankr. S.D.N.Y. 1984) ......................................................................... 30

5727930

7

**Statutes**

A.R.S. § 14-7706 .................................................................................................. 25

11 U.S.C. § 541 .............................................................................................. 18, 25

11 U.S.C. § 547 .................................................................................................. 30

11 U.S.C. § 549 .................................................................................................. 19

11 U.S.C. § 1104 ............................................................... 9, 11, 16, 18, 22

11 U.S.C. § 1107 .................................................................................................. 2

11 U.S.C. § 1112 ...................... 9, 11, 16, 17, 18, 19, 22, 25, 27, 31

11 U.S.C. § 1115 .................................................................................................. 18

Elkins Kalt Weintraub Reuben Gartside LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

## MEMORANDUM OF POINTS AND AUTHORITIES

Multiple Energy Technologies, LLC ("MET") hereby submits this Memorandum of Points and Authorities in support of its motion for an order appointing a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a) or, alternatively, converting the above-captioned case to Chapter 7 pursuant to 11 U.S.C. § 1112(b)(1).

## I.   PRELIMINARY STATEMENT

The Court has given Casden ample opportunity to act as a fiduciary of this Estate, and Casden has proven that he cannot be trusted to do so.  His repeated disregard for his fiduciary obligations – culminating in the brazen unauthorized and undisclosed post-petition transfers described below – demonstrates that continued administration of this case under Casden's control not only is untenable, but also inconsistent with the Bankruptcy Code's explicit directive that a bankruptcy court "shall" convert a case to Chapter 7 or appoint a Chapter 11 trustee if "cause" is present.

MET recently discovered that, in 2025, Casden made multiple undisclosed post-petition transfers totaling $650,000 to his company, Hologenix.  These transfers – booked as "contributions" but which were not matched by any other owners/members of Hologenix – were not disclosed in Casden's monthly operating reports or in his supplemental Rule 2004 disclosure, and were uncovered only because they were buried in the monthly operating reports and bank statements filed by Hologenix in its own bankruptcy case.

These post-petition transfers, made without Court approval and without disclosure, are independently sufficient to mandate the appointment of a Chapter 11 trustee or conversion of the case to Chapter 7.  *See, e.g., In re Grasso*, No. 12-1063-mdc, 2012 WL 13168488, at *3 (Bankr. S.D.N.Y. Oct. 16, 2012) ("The Debtor's gross mismanagement of estate assets is evidenced by . . . [t]he Debtor's failure to disclose his receipt and use of estate assets . . . [and] . . . [t]he Debtor's post-petition transfer of estate assets to fund the operation of entities in which he holds an ownership interest . . . ."); *In re PRS Ins. Grp., Inc.*, 274 B.R. 381, 385 (Bankr. D. Del. 2001) ("Diversion of funds and misuse of corporate assets constitute fraud or dishonesty sufficient to warrant appointment of a trustee under section 1104(a)(1)."); *In re Intercat, Inc.*, 247 B.R. 911, 923 (Bankr. S.D. Ga. 2000) (the diversion of substantial corporate assets to the debtor's management or to other corporations

owned by management constituted mismanagement at best and fraud or dishonesty at worse; either warrants appointment of a trustee); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 527 (Bankr. E.D.N.Y. 1989) ("[U]nauthorized postpetition transfers of estate assets constitute grounds for appointment of a Chapter 11 trustee."). Casden's unauthorized dissipation of estate assets makes clear that Casden cannot be trusted to faithfully discharge his fiduciary obligations, safeguard estate assets, or deal candidly with creditors or the Court. Given Hologenix's own bankruptcy and financial distress, the transferred funds are likely unrecoverable, compounding the harm to the Estate. "In this case it is not necessary to delineate whether the cause consists of fraud, dishonesty, incompetence, gross mismanagement 'or similar cause'. The result is the same since the finding of any one of these causes within the penumbra of fiduciary neglect, as defined, mandates appointment of a trustee." *V. Savino Oil*, 99 B.R. at 527.

In addition to making the unauthorized post-petition transfers to Hologenix, Casden also has continued his use of the Estate as his own personal piggybank without regard for his creditors. During the entirety of this case, Casden has operated on a cash flow-negative basis. Casden's excessive spending has drained Estate funds from almost $400,000 to less than $20,000 in less than 2 years, all in an effort to support his pre-petition extravagant lifestyle. Casden's conduct has rendered the Estate administratively insolvent, requiring reliance on his purported "spendthrift trust" to pay hundreds of thousands of dollars to Estate professionals.

The substantial and continuing loss to and diminution of the Estate, coupled with Casden's total inability – for over two years – to propose a confirmable plan, provides an additional and independent basis for removal of Casden as a debtor in possession. *In re Mense*, 509 B.R. 269, 285 (Bankr. C.D. Cal. 2014) ("Because . . . Mense's personal expenses exceed his income, the cash in [the] estate continues to dissipate as the appeal takes its course largely due to Mense's significant personal expenses, accruing administrative expenses, and the cost of the appeal. There is a continuing loss to or diminution of the] estate, and no reasonable likelihood of rehabilitation in either case."); *In re Rey*, 2006 WL 2457435, at *6 (Bankr. N.D. Ill. Aug. 21, 2006) (conversion warranted where debtors "are not reorganizing at all," but "simply surviving by liquidating the few assets of the estate," using proceeds to fund personal living expenses and professional fees).

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

5727930

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Casden's pattern of "ask for forgiveness rather than permission" conduct, evidenced by his unauthorized postpetition transfers to Hologenix while allowing the Estate to become administratively insolvent through continued gross mismanagement, not only warrants immediate relief – it mandates it.  There is clear and compelling cause under 11 U.S.C. §§ 1104(a) and 1112(b)(1) to remove Casden as debtor in possession and appoint a trustee.  The Estate now requires an adult in the room, a true fiduciary who will act with transparency, accountability, and a genuine commitment to protecting and preserving Estate property for the benefit of creditors.

## II.   STATEMENT OF FACTS

### A.   Casden Loses Tens of Thousands of Dollars Every Month, Resulting in the Administrative Insolvency of the Estate

On October 23, 2023, the day Casden filed for bankruptcy, he received a $400,000 distribution from his trust, which became the sole funds in his DIP account.[1] Doc. 26, p. 6; Doc. 33-1, p. 14. By August of 2025, nearly all of that money has been spent, leaving a balance of $16,937.  Doc. 361. Casden's dissipation of these funds during the pendency of this bankruptcy case is a direct result of the fact that Casden consistently operates on a cash flow-negative basis, losing an average of approximately $16,000 per month.

MET was concerned that this would happen and, in June 2024, raised Casden's spending as a basis for dismissal or conversion of this case (Doc. 199).  In September 2024, this Court denied MET's motion, explaining that this was insufficient "cause" for dismissal or conversion.  (Doc. 247.)

Over the last twelve months (*i.e.*, since the Court's denial of MET's prior motion), Casden has had income totaling $475,471 and expenses totaling $717,426 – *i.e.*, a loss of $241,955.[2] Casden's monthly losses are directly attributable to various expenses that far exceed what an everyday person (let alone a Chapter 11 debtor) would incur in one year, including:

---

[1] Casden sought to exempt the entirety of his DIP account (Doc. 26, Schedule C, p. 12), which was heavily litigated wherein it was clear Casden had been dishonest with the Court about his need for the exemption, and thus, the exemption not allowed. Doc. 56, 74, 126, 147, 154, 181; Doc. 197, 41:6-42:16. Thereafter, Casden agreed to cease paying only the $2000/month for his fish tank and his father's living expenses. *See* Doc. 223, 11:25-12:23.

[2] Doc. 299, p. 9; Doc. 305, p. 9; Doc. 313, p. 9; Doc. 323, p. 9; Doc. 334, p. 9; Doc. 335, p. 9; Doc. 336, p. 9; Doc. 352, p. 9.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1    • $24,078 on travel;

2    • 37,676 on food expenses;

3    • 15,370 on unidentified Amazon purchases;

4    • $21,615 on therapy;

5    • $4,083 on subscriptions;

6    • $9,609 in cash withdrawals for unidentified expenses; and

7    • $5,000 for a 1:1 coach.

8    *See* Doc. 263, 286, 289, 299, 305, 313, 323, 334, 335, 336, 352

9    Even in August 2025, Casden did not slow down his spending:

10   • a trip to Lake Tahoe where he spent over $5,000 including $1,200 to Alpine Ascents

11   (mountaineering tours); $399 to Malibu Divers (Doc. 361, p. );

12   • $1,490 on apparel including $450 for Juan Cuevas Jewelry;

13   • $319 to attend a festival;

14   • $7,796 for a single installment for season tickets to the Kings and Lakers;

15   • $1,760 for therapy;

16   • $900 in cash;

17   • $540 for pictures;

18   • $4,006 for food expenses; and

19   • $2,964 on unidentified Amazon purchases.

20   Doc. 361, pp. 21-23.

21   After this egregious spending, which far outpaced Casden's income, the DIP account had a

22   remaining $16,937. Rather than curb his spending and temper his lifestyle, Casden chose to replenish

23   his DIP account with a $5,000 advance of his salary from Hologenix (who itself is in bankruptcy)

24   and $100,000 from his Trust. Doc. 361, pp. 16, 20. These are simply not spending habits appropriate

25   for a Chapter 11 debtor with a relatively modest income.

26   Casden's conduct has rendered his Estate administratively insolvent. Indeed, Casden's

27   operating loss of approximately $16,000 per month does not even include the ongoing administrative

28   costs of this bankruptcy case. As described in Section II.C. below, Casden has paid professional fees

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

1    totaling nearly $600,000 directly from his purported "spendthrift" trust.  Without these distributions,

2    Casden clearly would not have been able to afford the administrative costs of this bankruptcy case,

3    which continue to accrue every month, and run out of money months ago.

4    **B.    Casden's Use of his Trust Pre-Petition**

5    Casden is the beneficiary of a family trust effective January 1, 2009 (the "Trust"). Declaration

6    of Nicole A. Sullivan dated October 6, 2025 ("Sullivan Decl."), Ex. A. The Trustee is Northern Trust

7    Company of Delaware ("Northern Trust"). *See id.*, p. 10; Sullivan Decl., Ex. B, Tr. 169:5-21. The

8    original Trust Adviser was Debtor's brother, Graham Casden. *See* Doc. 74, p. 132-133. Graham

9    Casden was subsequently replaced by Debtor's uncle, Alan Terry Leavitt. *See id.* Debtor calls the

10    Trust a "spendthrift trust," Doc. 74, p. 10, ¶ 8, but as explained herein, Casden exerts so much control

11    over the Trust that its "spendthrift" nature is illusory and the Trust is, in effect, Casden's ATM

12    machine.

13    Before filing for bankruptcy, Debtor received significant distributions from his Trust

14    including $2.8 million in 2023. *See* Doc. 1, p. 47.  At all times, Debtor has asserted that the Trust is

15    not part of his Estate because "he is not entitled to it." Sullivan Decl. Ex. B, Tr. 19:23-24; *see also*

16    Doc. 126, p. 6:12-16.

17    Mr. Leavitt testified he had sole discretion over all distributions from the Trust to or on behalf

18    of Casden Sullivan Decl., Ex. I ("Leavitt Tr."), p. 11:6-24. Mr. Leavitt also testified would review it

19    to "make sure everything was in order," *i.e.* "see if it was a worthwhile investment in [his]

20    determination because it was . . . up to [him]."  Leavitt Tr. 11:9-24. Yet, in contravention to the

21    explicit terms of the Trust, Mr. Leavitt further testified that it was not a useful investment for the

22    Trust to distribute money to Debtor for (1) his everyday living (p. 52:13-16); (2) vacation (p. 52:17-

23    20); (3) his father's day to day living expenses (p. 53:17-21); (4) his son's school tuition (p. 53: 22-

24    25); (5) living expenses for Casden's son's mother (p. 54:1-5); or (6) pet care (p. 54:12-15).  Mr.

25    Leavitt also testified that it was not a good use of the trust funds to use them for gambling. Leavitt

26    Tr. 117:22-118:3.

27    Mr. Leavitt further testified that if Mr. Casden told him that a monetary distribution was for

28    any reason other than investing in his company, he would have declined to issue a letter of direction.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

1    Leavitt Tr. p. 54:6-11. Despite this, in 2023, Mr. Leavitt authorized $2.7 million in cash distributions

2    and has no recollection as to the reason why Debtor needed those cash distributions. Sullivan Decl.,

3    Ex. J. Nor did Mr. Leavitt have any knowledge that Debtor gambled and did not know that he lost

4    $420,000 at a casino in early 2023. Leavitt Tr. p. 118:4-12. Mr. Leavitt did not send the letters of

5    direction directly to Northern Trust. Rather, Mr. Casden would send them via email with Mr. Leavitt's

6    electronic signature, for which he could not recall how it was affixed. Sullivan Decl., Ex. K.

7    **C.    Debtor's Use of Trust Post-Petition, Including Unauthorized and Undisclosed**

8    **Post-Petition Transfers by Casden**

9    After he filed for bankruptcy, his Trust Adviser, upon advice of counsel, refused to distribute

10   any money to Debtor. In accordance therewith, on February 27, 2024, counsel for then Trust Adviser,

11   Alan Terry Leavitt submitted a response to Casden's Disclosure Statement and specifically stated

12   "[t]he Debtor and the bankruptcy estate have no property rights to the Spendthrift Trust and cannot

13   compel the Trustee to make any distributions." Doc. 130, p. 4:13-14.

14   **1.    Casden's Use of the Trust to Pay Administrative Claims Without Prior**

15   **Disclosure to or Approval by the Court**

16   In or around September 2024, the Trust Adviser was replaced and the new Adviser, Joel

17   Tucker, began distributing money to and on behalf of Casden. Leavitt Tr. 32:12-33:13. Thereafter,

18   and despite that the Trust is purportedly inaccessible to creditor claims and not property of Casden's

19   Estate, the Trust selectively transferred $590,000 to Casden's administrative creditors – namely, his

20   attorneys:

21   - December 18, 2024: distribution of $450,000 to Debtor's former bankruptcy counsel,

22   Danning, Gill, Israel & Krasnoff, LLP (Sullivan Decl., Ex. C; Doc. 305);

23   - June 23, 2025: distribution of $100,000 to Debtor's appellate counsel, Bendolin &

24   Serlin (Sullivan Decl., Ex. E; Doc. 355, p.1) even though Hologenix lists the $100,000

25   as a debt it owes to Casden personally in its monthly operating report (Sullivan Decl.,

26   Ex. F p. 14); and

27   - June 24, 2025: distribution of $40,000 to Debtor's bankruptcy counsel, Salvato

28   Boufadel LLP, labeled as a retainer (Sullivan Decl., Ex. E) even though Casden had

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1    been paying Salvato Boufadel LLP from the DIP account previously (Doc. 323, p. 36);

2    Without tapping into and selectively accessing the Trust to pay his professionals (without

3    disclosing to the Court or any creditors that the professional fees would be paid from the Trust),

4    Casden clearly could not have afforded the payment of the fees.

5    **2.    Casden's Use of the Trust to Make Unauthorized and Undisclosed Post-**

6    **Petition Transfers**

7    In addition to using the Trust to selectively satisfy certain creditor claims, Casden also used

8    the Trust to make $673,976.69 in unauthorized and undisclosed post-petition transfers to third parties.

9    Specifically, Casden made the following post-petition transfers using the Trust:

10    • On February 25, 2025, the Trust, upon information and belief, at Casden's direction paid

11        an initial capital call to Interplay Venture Fund III, LP in the amount of $23,976.69

12        (Sullivan Decl. Ex. D);

13    • On April 11, 2025: distribution of $300,000 to Hologenix listed as "Members' Equity:

14        Owner's Equity – Contributions" (Sullivan Decl., Ex. G; Doc. 335), which transfer for

15        Casden's benefit was not authorized by or disclosed to this Court; and

16    • On July 15, 2025: distribution of $350,000 to Hologenix for "Ownership Equity Interest"

17        (Sullivan Decl., Ex H; Doc. 352), which transfer for Casden's benefit was not authorized

18        by or disclosed to this Court.

19    Despite that Casden's $650,000 transfers to Hologenix were denominated as "equity

20    contributions," no similar contributions appear to have been made by any other members of

21    Hologenix.    Nor does it appear that any corporate formalities were observed in making the

22    unauthorized "equity contributions."    Rather, Casden simply felt the need to move money around

23    and, completely disregarding that he is a Chapter 11 debtor in possession with fiduciary obligations

24    to the Estate, did as he pleased.

25    In sum, since December 2024, Casden has utilized the Trust to transfer a total of

26    $1,263,976.69 without prior Court approval or any regard for his creditors or the viability of his

27    Estate.

28

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**D.      MET's Attempts to Meet and Confer with Casden's Counsel**

After MET discovered the unauthorized post-petition transfers to Hologenix, MET's counsel contacted Casden's general bankruptcy counsel to alert him to this discovery and to MET's intent to file this Motion.  Casden's counsel stated that he had been unaware of the transfers and asked MET's counsel to delay filing the Motion so that he can discuss the issue with Casden and subsequently follow up with MET's counsel.  MET's counsel agreed to the request.

Since that time, MET's counsel has heard nothing from Casden's counsel, despite sending multiple follow-up emails.  (*See generally* Declaration of Roye Zur.)

## III.      ARGUMENT

**A.      There is "Cause" to Remove Casden as a Debtor in Possession**

Casden's conduct in this case mandates his removal as a debtor in possession.  Under 11 U.S.C. § 1104(a)(1), a court ***shall*** appoint a Chapter 11 trustee for "cause," which includes "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor . . . ."  11 U.S.C. § 1104(a)(1).  "Cause and the best interest of creditors and other parties are separate and independent bases for granting a motion to appoint a trustee under 11 U.S.C. § 1104(a)."  *In re Pasadena Adult Residential Care, Inc.*, 2015 Bankr LEXIS 3601, *45 (Bankr. C.D. Cal. Oct. 23, 2015) (noting that "[s]ome cases have held that, once a court finds that 'cause' exists to appoint a trustee under 11 U.S.C. § 1104(a)(1), a trustee shall be appointed and there is no discretion to deny relief").  "Whether a particular act or omission rises to the level of cause requires consideration of all pertinent facts and circumstances."  *In re Velde*, No. 18-11651-A-11, 2018 Bankr. LEXIS 2810, *5 (Bankr. E.D. Cal. Sept. 12, 2018).

Similarly, pursuant to 11 U.S.C. § 1112(b), "the court ***shall*** convert a case under this chapter to a case under Chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate."  11 U.S.C. § 1112(b) (emphasis added).  Section 1112(b) defines "cause" to include the following:

(A)      substantial or continuing loss to or diminution of the estate and the absence of reasonable likelihood of rehabilitation;

(B)      gross mismanagement of the estate . . . .

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

11 U.S.C. § 1112(b)(4); *see also Margitan v. Hanna*, EW-18-1071-FLS, 2018 Bankr. LEXIS 3608, *16 (9th Cir. BAP Nov. 13, 2018) (once cause is established, the court has wide discretion in determining whether to convert or dismiss).

Here, there is "cause" to remove Casden as a debtor in possession – preferably by appointment of a Chapter 11 trustee – because Casden has repeatedly failed to preserve assets or act in a fiduciary manner to this creditors and instead has squandered or protected Estate assets for his own personal gain without regard for his creditors. Given Casden's serious misconduct in transferring money from his Trust for his own personal benefit into Hologenix without permission or authority from this Court, there is a substantial need for a trustee to protect the creditors' interests. *See Rand v. Porsche Fin. Servs.*, BAP No. AZ-10-1160-BaPaJu; 2010 Bankr. LEXIS 5076, at *31-32, n. 14 (9th Cir. BAP Dec. 7, 2010) (citation omitted) (discussing factors to consider when choosing whether to convert or dismiss for cause).[3] Moreover, a trustee would take steps to maximize the economic value of the Estate for the benefit of creditors that Casden's self-interest has prevented him from doing. This includes liquidating Casden's $2 million condominium, Casden's $15 million Trust, his expensive jewelry and artwork as well as his shares in Hologenix, all of which will inure to the benefit of his creditors.

In any event, it is clear that under no circumstances is it in the best interests of the creditors or the Estate for this bankruptcy to continue under the sole control of Casden.

### 1.    Casden's Post-Petition Unauthorized Transfers Mandate Removal of Casden as a Debtor in Possession

It is clear that removal of a debtor in possession is necessary where, as here, Casden is not abiding by "the duty to preserve the estate assets and the duty of impartiality." *In re Velde*, 2018 Bankr. LEXIS 2810, *16.; *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985) ("a debtor-in-possession of the estate, has the duty to protect and conserve property in its possession for the benefit of creditors").

A debtor in possession – like Casden – cannot make a transfer without court authorization.

---

[3] If a trustee is appointed, he or she would be empowered to pursue avoidance actions previously brought by MET.

5727930

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  Notwithstanding, Casden made at least two significant unauthorized transfers to Hologenix, another

2  unauthorized transfer to satisfy a capital call on an existing investment and three substantial

3  payments to his attorneys after affirming they would paid out of the Estate.[4]  Once the Trust

4  transferred these funds for the benefit of Casden, they became property of the Estate.  *See* 11 U.S.C.

5  § 541(a)(7) (including in property of the estate "any interest in property that the estate acquires after

6  commencement of the case"); § 1115(a)(1) (in an individual Chapter 11 case, property of the estate

7  includes "all property of the kind specified in section 541 that the debtor acquires after the

8  commencement of the case but before the case is closed, dismissed, or converted to a case under

9  chapter 7, 12, or 13, whichever occurs first").  All of the distributions from his Trust were property

10  of the Estate and should not have been transferred to third-parties without prior approval from this

11  Court.

12      The fact that Casden made not one, but two unauthorized and undisclosed post-petition

13  transfers to Hologenix (and another transfer to Interplay Venture Fund III, LP) is a clear breach of

14  his fiduciary duty and constitutes the type of gross mismanagement warranting "cause" for his

15  immediate removal as a debtor in possession under either section 1112(b) or section 1104(a).

16  Notably, Casden not only failed to disclose the transfers to Hologenix in his MOR but also in his

17  supplemental 2004 disclosure to MET, evidencing his bad faith and efforts to hide the transfers not

18  only from his creditors but this Court.[5]  *See, e.g.*, *In re Hoyle*, 2013 WL 210254, at *12 (Bankr. D.

19  Idaho Jan. 17, 2013) (finding "gross mismanagement" where individual debtor made an unauthorized

20  transfer of estate property and subsequently failed to make a clear and express disclosure of what he

21  had done); *Grasso*, 2012 WL 1316488, at *2 ("The Debtor's gross mismanagement of estate assets

22  is evidenced by . . . [t]he Debtor's failure to disclose his receipt and use of estate assets . . . [and] . . .

23  [t]he Debtor's post-petition transfer of estate assets to fund the operation of entities in which he holds

24  an ownership interest . . . ."); *see also In re Carrington*, 710 F. Supp. 3d 248, 256-57 (S.D.N.Y. 2024)

25  ("[T]he Bankruptcy Court did not abuse its discretion in finding that Carrington's unauthorized sale

26

27  [4] Doc. 29, 35, 318.

28  [5] Doc. 335, 352; Sullivan Decl., Ex. E.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  of the Florida Property and use of some of the sale proceeds, both of which are undisputed, as well

2  as Carrington's failure to disclose the sale after the fact, constitute gross mismanagement under

3  Section 1112(b)(4).”); *In re Sillerman*, 605 B.R. 631, 649-50 (Bankr. S.D.N.Y. 2019) (finding “gross

4  mismanagement” by individual debtor who made transfers to affiliated entity without court approval);

5  *Pasadena Adult Residential Care*, 2015 Bankr. LEXIS 3601 at *46-*47 (“continued financial

6  excesses by current management” and “reckless disregard of the dire financial realities of its

7  businesses” justified appointment of a Chapter 11 trustee).

8      These improper and hidden transfers – standing alone – rise to the level of gross

9  mismanagement constituting cause mandating conversion or appointment of a trustee who will

10  maximize the value of the estate by seeking to recover those trust distributions under 11 U.S.C. §

11  549 and evaluating whether the entire trust corpus is property of the Estate[6], neither of which Casden

12  would do because he is unable to separate his self-interest from his responsibilities as the Estate's

13  fiduciary.[7] *See* Section A(4) *infra*.

## 2.    The Estate is Administratively Insolvent with Continuing Diminution of the Estate and No Likelihood of Rehabilitation

16      Section 1112(b)(4)(A) identifies as one of the non-exclusive lists of examples of “cause” for

17  dismissal “substantial or continuing loss or diminution of the estate and the absence of a reasonable

18  likelihood of rehabilitation.”  Courts often look to whether the debtor has “negative cash flow” or “no

19  income.” *3685 San Fernando Lenders, LLC v. Cross Equities Partners, LLC (In re USA Commer.*

20  *Mortg. Co.)*, 452 Fed. App'x 715, 724 (9th Cir. 2011) (concluding that “the district court did not

21  abuse its discretion in finding there was ‘nothing to reorganize’ and converting the case pursuant to

22  § 1112(b)(4)(A)” based on the finding of a negative cash flow); *In re Loop Corp. v. U.S. Trustee*, 379

23  F.3d 511, 515-16 (8th Cir. 2004) (“[A] negative cash flow situation alone is sufficient to establish

24  continuing loss to or diminution of the estate.”); *Mense*, 509 B.R. at 284 (citations omitted) (cause

25

---

26  [6] Given that Casden has complete control over his Trust and the spendthrift protections are not being followed, there is no doubt that a trustee will have no qualms about bringing the Trust into the Estate.

27  [7] Although MET was granted standing to pursue certain creditors to maximize the estate, MET would cede the right to
28  pursue those avoidance actions to a Chapter 11 trustee for the benefit of creditors.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1   exists if "the estate has suffered some diminution in value").

2          Here, not only does Casden have a negative cashflow – he is hemorrhaging money to the point

3   of administrative insolvency.  Since August 2024 to July 31, 2025, Casden steadfastly dwindled down

4   the available funds from $256,762 to a measly $24,324. *See* Doc. 263, 352. Without any regard for

5   his creditors or the Estate, Casden spent $16,834 *more than* he earned in July 2025 and then spent

6   $12,388 more than he earned in August 2025.[8] Doc. 352, p. 16; Doc. 361, p. 16. Indeed, on average,

7   Casden is losing at least $16,000 per month, without accounting for administrative expenses

8   associated with Chapter 11, despite having affirmed in July 2024 that he was reducing his expenses

9   and would be cashflow positive.[9] This cash depletion does not even account for the approximate

10  $600,000 in professional fees paid on behalf of the Estate directly by the Trust since December 2024.

11  In fact, if Casden had paid his attorneys from his DIP account, he would have depleted that account

12  months ago.  It is clear that Casden used his Trust to avoid that reality.  With no end in sight (given

13  this Court's effective stay pending resolution of the Hologenix bankruptcy) and no basis to believe

14  that there will be greater income coming into the Estate or that Casden's spending habits will be

15  tempered, it is clear that the Estate is administratively insolvent and will remain so.

16         Casden's conduct in this two-year-old Chapter 11 case also has demonstrated that there is no

17  reasonable likelihood of rehabilitation. "[R]ehabilitation does not necessarily denote reorganization,

18  which could involve liquidation. Instead, rehabilitation signifies something more, with it being

19  described as 'to put back in good condition; re-establish on a firm, sound basis." *In re Creekside*

20  *Senior Apts., L.P.*, 489 B.R. 51, 61 (6th Cir. BAP 2013). This element "is not the technical one of

21  whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify

22  continuance of the reorganization effort." *In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 742

23  (Bankr. N.D. Ill. 2004). "Rehabilitation 'contemplates the successful maintenance of the debtor's

24  business operations.'" *In re Vallambrosa Holdings, LLC*, 419 B.R. 81, 89 (Bankr. S.D. Ga. 2009)

25

26  [8] As of August 31, 2025, Caden had earned (without his Trust) $44,775 (not including the $5,000 salary advance from
Hologenix) and spent $57,163 (another month of negative cash flow) with a remaining $16,937 in the Estate, which he
then replenished with a $100,000 distribution from the Trust, presumably to ensure he had funds in his DIP account to

27  continue his extravagant lifestyle and avoid conversion on grounds his Estate is administratively insolvent. Doc. 361,
pp. 16, 20.

28  [9] Doc. 233, p. 52:23-53:18.

5727930

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  (citation omitted). As such, "[a] reasonable likelihood of rehabilitation is absent when the debtor's

2  business operations do not justify continuance of the reorganization effort." *Mense*, 509 B.R. at 284

3  (citations omitted).  Casden has been languishing in Chapter 11 for nearly two years.  He has spent

4  over a million dollars in professional fees that could have gone to creditors simply to avoid having to

5  post a supersedeas bond.  It is clear that his income is far outpaced by his irresponsible and improper

6  spending habits, and that he is intending to simply use this bankruptcy case to stall his creditors, with

7  no plan to exit.

8          Under similar circumstances, courts have converted cases to Chapter 7.  *See Hassen Imps.*

9  *P'ship v. City of W. Covina (In re Hassen Imps. P'ship)*, No. CC-13-1019-KiPaD, 2013 Bankr.

10  LEXIS 3870, *39-40 (9th Cir. BAP Aug. 19, 2013) (finding operating losses of ~$80,000 per month,

11  mounting administrative expenses and no guarantee of a substantial cash infusion evidenced

12  continuing loss or diminution of the estate that mandated conversion); *In re Pinnacle Foods of Cal.*

13  *LLC,* Nos. 24-11015-B-11, MB-4, VP-2, 24-11016-B-11, 24-11017-B-11, 2025 LX 343529, *5, *10,

14  *15 (Bankr. E.D. Cal. Mar. 27, 2025) (holding "cause" existed to convert the case to Chapter 7 based

15  on inconsistent and negative cash flow and lack of administrative solvency because the case continued

16  to teeter on administrative insolvency while accruing professional fees").

17          Where, as here, Casden continues to irresponsibly and unapologetically outspend his income

18  each month, is mired in endless litigation (solely for Casden's benefit) that the Estate simply cannot

19  afford to sustain, resulting in a continued loss or diminution to the Estate, cause for removal of Casden

20  as a debtor in possession is mandated.

21          **3.      Casden Has Grossly Mismanaged the Estate**

22          The facts evidencing the diminution of the Estate also demonstrate that Casden has grossly

23  mismanaged the Estate and acted in bad faith, further constituting "cause" for conversion or

24  appointment of a trustee.  Indeed, an individual debtor has a fiduciary duty to manage the bankruptcy

25  estate for the benefit of all creditors. *See In re Perez*, 30 F.3d 1209, 1214 n.5 (9th Cir. 1994)

26  (explaining that a Chapter 11 debtor in possession has "a fiduciary relationship to the estate's

27  creditors"); *see also* 11 U.S.C. § 1107(a). *See Jiajie Zhu v. Jing Li*, 2024 U.S. Dist. LEXIS 45552 at

28  *6-*7, 2024 WL 1122422 (N.D. Cal. Mar. 14, 2024) (stating debtors "don't get to stiff their judgment

5727930

21

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  creditor just because they spend lavishly"); *Rey*, 2006 WL 2457435, at *6 ("The recently-filed

2  operating reports really tell the story in this case. They demonstrate that the Reys are not reorganizing

3  at all. Rather, they are simply surviving by liquidating the few assets of the estate with one hand,

4  holding off their creditors with the other. Proceeds from the asset sales are financing both: the lawyers

5  get paid to continue the bankruptcy and stall the creditors, while the Reys get to live off the rest, rent-

6  free on the South Carolina beach. The Reys' minimal prospects do not justify continuation of a

7  chapter 11 bankruptcy and its considerable costs. With both statutory conditions satisfied, there is

8  'cause' to convert or dismiss under section 1112(b)(1)"); *In re Canion*, 129 B.R. 465, 470 (Bankr.

9  S.D. Tex. 1989) ("When it becomes apparent (1) that a debtor has made unreasonable expenditures

10 and numerous mistakes in handling the case; (2) that delay is unreasonable and prejudicial; and, (3)

11 that there is not a reasonable likelihood of rehabilitation, then we will cease all efforts to reorganize.

12 . . . [T]he debtor has failed in his attempt to balance his personal interests with his fiduciary obligation

13 to the creditors and the estate"); *Grasso*, 2012 Bankr. LEXIS 6247, *15, 2012 WL 13168488

14 (appointment of a Chapter 11 trustee was in the estate's best interest because "likely to maximize the

15 recovery of the estate creditors as well as avoid the depletion of estate assets resulting from the

16 Debtor's intransigent and dishonest behavior").

17     Here, Casden's mismanagement began before he filed for bankruptcy. *See* 11 U.S.C. §

18 1104(a)(1) (including as "cause" mandating the appointment of a trustee "fraud, dishonesty,

19 incompetence, or gross mismanagement of the affairs of the debtor . . . ***either before or after*** the

20 commencement of the case") (emphasis added).  In the 10 months preceding his filing, Casden

21 received over $3 million in cash, all of which was spent before filing his Petition on October 17,

22 2023, including losing $420,000 (140% more than his gross income) in a few days of gambling in

23 Vegas while at a trade show for Hologenix. As a result thereof, Casden had his Trust distributed

24 $400,000 distribution to him the same day he filed his Petition without advising his Trust Adviser

25 that he was filing for bankruptcy. Doc. 26, p. 6; Doc. 33-1, pp. 2, 14; Leavitt Tr. 29:6-18; 66:20-25.

26 Casden then immediately sought to exempt from his Estate. Doc. 74.

27     MET objected, noting to the Court the egregiousness of his spending, including $10,070 for

28 "Housekeeping" in less than five months, *see* Doc. 147, p. 8; $300 for a "Halloween photoshoot,"

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1    (his son's mother is a professional photographer) *see id.* at 12; a saltwater reef tank costing $2,000

2    per month to maintain, *id.* at 6:1-3, and "a few thousand dollars" on his son's birthday party, just to

3    name a few. *See* Sullivan Decl., Ex. B, Tr. at 318:3-5. Even while the parties were engaged in motion

4    practice over the propriety of his exemption request, Casden spent 5,000 to take his son to Austin,

5    Texas to witness the solar eclipse in totality, rather than watching from Los Angeles, including flying

6    business class because "I'm six five and it's painful" to fly economy. Sullivan Decl., Ex. B, Tr. at

7    273:17-19, 319:4-320:21, 329:11-16.

8          This Court recognized during the June 11, 2024 hearing wherein it denied Casden's exemption

9    request that Casden's spending was excessive (*i.e.* $3,000 a month on housekeeping) and noted that

10    "he doesn't seem to know exactly what his father does with the money or the mother of the child does

11    with the money" and "doesn't really inquire about [] where the money is being spent." Doc. 197,

12    26:12-24, 28:16-18, 42:5-6. This Court ultimately found that Casden had not met his burden because

13    he did not have to live where he did, did not know where or how his money was spent, makes more

14    money than the average person and "an average person would be far less. . . ." Doc. 197, 41:6-42:16.

15    In the meantime, Casden forced the Estate (and MET) to expend significant time and fees debating

16    the exemption, which only benefitted Casden and not his creditors. Not surprisingly, neither MET's

17    objections nor this Court's concerns chastened Casden to better manage the Estate.

18          In fact, even though Casden advised the Court in July 2024 that he was reducing his expenses

19    by $17,696 per month – eliminating $2,000 for the fish tank; $6,500 for his father's rent; $2,700 for

20    housekeeping; $1,602 in support to his son's mother; and, $4,894 for his son's mother's rent for a

21    total reduction of $17,696[10] – his excessive spending continued. Casden continued to spend on

22    average $62,000 per month (only $11,000 less than he was spending before the exemption was

23    denied) while he earned only an average of $40,000 per month.[11] Some of the more outrageous

24    expenditures included: $12,038 at the Four Seasons in Westlake, CA in January 2025; $598 on a

---

[10] Doc. 223 at 40:25-41:15, 41:22-42:3. When combined with the $1,500 increased rent he charged for his condo, Casden should have saved $19,196. Doc. 223 at 42:1-3. Notably, this amount did not include the other monthly expenses he ceased paying for his father's aides, food and other miscellaneous expenses, which should have substantially increased the monthly savings.

[11] This was, of course, contrary to his Affirmation to the Court that he would be in the black beginning in August 2024. Doc. 223 at 41:19-20.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  nerve stimulator from Truvaga in February 2025; $470 on Floral Art in February 2025; $2,556 on

2  expenses in Hawaii and $3,457 taken in cash withdrawals in Hawaii in March 2025; $550 for his

3  son's mother's haircut in April 2025; $2,994 for camping and mountaineering experts in May 2025;

4  $861 on subscriptions in May 2025; $834 at a nail salon in June 2025; $1,500 on a 1:1 executive

5  coach from Mindfix in July 2025; $4,355 for therapy in July 2025 and $5,368 in travel to Lake Tahoe

6  including personal mountain guides and scuba instructors in August 2025.[12]

7  Casden's use of cash withdrawals labeled as "personal" and unidentified Amazon purchases

8  to conceal the nature of his expenditures further shows his gross mismanagement and bad faith. In

9  just March 2025, Casden withdrew over $3,500 in cash from the ATM, including three successive

10  withdrawals in a single day. Doc. 334 at 21-25, 35-42. Similarly, from April to August 2025, Casden

11  withdrew $4,555 in cash for unidentified expenses. Doc. 335, 336, 339, 352, 361. In July 2025,

12  Casden spent $3,081 at Amazon and another $2,963 in August 2025. Doc. 352, 361. In addition,

13  Casden spent another $9,326 in unidentified Amazon purchases from January to June 2025. Doc. 313,

14  323, 334, 335, 336, 339.

15  Ultimately, Casden has had a negative cash flow each month until he decided to replenish his

16  DIP account with a $100,000 distribution from his Trust in contravention to his sworn statement to

17  this Court that he would be cash flow positive as of August 2024.[13] Indeed, in just the first eight

18  months of 2025, Casden's income was $323,234 (without the Trust distribution) or $423,234 (with

19  the Trust distribution) and his reported expenses were $498,089. Even with the $100,000 infusion

20  from his Trust, Casden still spent $74,855 more than he earned (or $174,855 more without the Trust

21  distribution). It is clear that Casden's income is far outpaced by his irresponsible and improper

22  spending habits and that he is intending to simply use the Trust – which he maintains is not property

23  of the Estate – as a piggy bank to continue surviving in Chapter 11 and stalling his creditors, with no

24  plan to exit.[14] *See Mense*, 509 B.R. at 284 ("[a] reasonable likelihood of rehabilitation is absent when

25

26  [12] *See e.g.* Doc. 313, 323, 334, 335, 336, 339, 352, 361.

27  [13] Doc. 233, p. 52:23-53:18; Doc. 361.

28  [14] Indeed, Casden has repeatedly shown his unfitness to serve as an estate fiduciary in *any* bankruptcy case given his unabated propensity to make decisions in his self-interest at the expense of his creditors.

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

the debtor's business operations do not justify continuance of the reorganization effort") (citations

omitted).  As such, there can be no question that Casden continuing to run this Estate is **not** in the

best interests of the creditors and rises to the level of cause mandating this Court to either convert the

case or appoint a trustee under 11 U.S.C. § 1112(b)(4)(A) and (B).[15] This is even more true here when

there is no reason to believe that there will be greater income coming into the Estate or that Casden's

spending habits will be tempered.

### 4.   The Trust is Used to Pay Creditors and Turnover of the Trust Corpus Should Be Pursued by an Independent Trustee

Casden's exercise of control over the Trust – as described in Section II.C. above – makes clear

that its purported "spendthrift" nature is a sham, and that an independent Chapter 11 trustee should

pursue it for the benefit of creditors.

When a beneficiary of a spendthrift trust has "sufficient dominion and control over the trust

assets," it is not excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). "The primary

consideration in determining whether a trust qualifies as a spendthrift trust is the debtor's degree of

control over his trust." *See In re Kaplan*, 97 B.R. 572, 577 (9th Cir. BAP 1989), *superseded by* A.R.S.

§ 14-7706 (quoting Restatement (Second) of Trusts § 153(2) (1959) ("if the beneficiary is entitled to

have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer

of his interest in the principal is invalid."). In *Malloy v. Morrison (In re Morrison)*, 2010 Bankr.

LEXIS 4326, *10 (Bankr. N. Okla.), the court held that the spendthrift trust was property of the

bankruptcy estate because:

> In the present case, many of the terms of the Trust pay lip service to the notion of a spendthrift trust. However, while Sharon has no right to encumber or alienate the Trust Funds so long as they remain in the Trust, she has an unfettered right to have them distributed to her at any time upon demand. That right became property of the estate under § 541(a)(1). As property of the estate, the Trust Funds are subject to Malloy's dominion and control.

*See also See In re Dodart*, 577 B.R. 406, 412 (Bankr. D. Utah 2017) (holding "once a beneficiary has

a right to demand distribution, he has the requisite amount of control to essentially have an ownership

---

[15] At a minimum, cause exists to convert under §1112(b)(4)(A) because administrative claims continue to accrue, and Debtor has no reasonable likelihood of reorganizing given his and the Court's position that he cannot even offer a plan until the Hologenix bankruptcy (currently on appeal) is resolved.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

interest in the property, and the spendthrift provision is no longer enforceable'"); *Estate of Blardone v. McConnico, Tex.Civ.App.* 604 S.W.2d 278, 281 (1980) (stating "if the beneficiary can call for the principal at will, there is in substance, no condition precedent, and the beneficiary is considered at this point to be the sole owner of the corpus"); *Ullman v. Cameron*, 186 N.Y. 339, 346 (1906) (noting it was sound policy that "once a beneficiary has a right to demand distribution, he has the requisite amount of control to essentially have an ownership interest in the property, and the spendthrift provision is no longer enforceable").

The evidence here shows that Casden has unfettered control over distributions from his Trust and has already paid certain creditors[16] from his Trust, such that the Trust is and should be part of the Estate. Casden's Trust Adviser, Alan Terry Leavitt, on the advice of counsel, refused to distribute any of the Trust to Casden or to his bankruptcy Estate, including any loan to fund a plan for reorganization in contravention to Casden's proffered plan. Sullivan Decl. Ex. L; Leavitt Tr. 13:7-15:8, 28:15-25, 58:10-22, 122:8-11; Doc. 97; Doc. 130. After Mr. Leavitt resigned, Joel Tucker did not heed this advice and began distributing significant funds from the Trust for the benefit of Casden and directly into his Estate. It appears that Mr. Tucker simply rubber stamps each and every request for distribution. A true Trust Adviser exercising his own unilateral discretion certainly would not believe it was appropriate for the Trust to fund Casden's DIP account or his bankruptcy counsel's fees when it is clear that both will need to be replenished multiple times before this bankruptcy comes to an end. Nor would an impartial Trust Adviser acting with unfettered discretion believe it was appropriate to invest $650,000 into a company that has been in bankruptcy for over 5 years. It is clear that Casden has exercised unilateral control over the Trust's assets, and that he intended to bring it into the Estate when he paid certain creditors from the Trust and included the Trust as a funding source of his proffered plan.[17]

To allow Casden's actions to stand would empower other debtors to unilaterally treat a

---

[16] "A 'creditor' is one to whom a debt is owing by another person who is the 'debtor.'" *J.B.G. v. P.J.G.*, 286 A.2d 256, 1971 Del. Ch. LEXIS 150 (Del. Ch. 1971) (citing Del. Code Ann. tit. 12, § 3536 (Lexis Advance through 85 Del. Laws, c. 148, 150, 152, 158, 160, 163-164)). This definition certainly includes Casden's attorneys as creditors.

[17] While a trustee can pay for a beneficiary's expenses, doing so under the direct, explicit, and uncoerced direction of the beneficiary is functionally no different from the beneficiary assigning his interest, which is not allowed under the terms of his trust. *See* Sullivan Decl., Ex. A, p. 20.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1    protected spendthrift trust as a personal, off-books funding source whereby he could unfairly

2    prioritize one creditor over others, violating the principle of fair treatment for all creditors in

3    contravention of the Bankruptcy Code. Casden's use of Trust assets to pay obligations previously

4    held by the Estate have effectively incorporated the Trust into the Estate. The Court can and should

5    use its equitable powers to correct such actions to uphold the integrity of the process by finding that

6    the spendthrift provisions were not abided by, and the Trust is part of the Estate. *See CBS, Inc. v.*

7    *Folks (In re Folks)*, 211 B.R. 378, 384 (9th Cir. BAP 1997) ("A bankruptcy court has broad equitable

8    powers and has the power to prevent injustice or unfairness in the administration of the bankruptcy

9    estate.").

10    Because Casden is hopelessly conflicted, and has no incentive to pursue the Trust and bring

11    its corpus into the Estate, the Court should appoint a trustee who is not so conflicted and who will

12    pursue, for the benefit of creditors, turnover of the Trust property as property of the estate.

13    **B.    Casden's Bad Faith Constitutes Independent Cause Under 11 U.S.C. § 1112**

14    In addition to the non-exclusive examples of cause enumerated in 11 U.S.C. § 1112(b)(4),

15    courts in this Circuit and elsewhere have consistently held that a debtor's bad faith constitutes cause

16    under 11 U.S.C. § 1112(b).  *See Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994);

17    *Marshall v. Marshall (In re Marshall)*, 403 B.R. 668, 689 (C.D. Cal. 2009); *Burgess v. Williams*,

18    2005 U.S. Dist. LEXIS 42099, at. 5 (C.D. Cal. Jan. 14, 2005.). In assessing bad faith, bankruptcy

19    courts consider "whether [the] debtor is attempting to unreasonably deter and harass creditors or

20    attempting to effect a speedy, efficient reorganization on a feasible basis." *Marsch*, 36 F.3d at 828.

21    Because bankruptcy courts are courts of equity, debtors with unclean hands should not be entitled to

22    obtain the benefits that can be obtained in bankruptcy. *Cedar Shore, Inc. v. Mueller (In re Cedar*

23    *Shore Resort, Inc.)*, 25 F. 3d. 375, 381 (8th Cir. 2000) ("A bankruptcy case may be dismissed for bad

24    faith alone where circumstances warrant); *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.*

25    (*In re Little Creek Dev. Co.*) 779 F. 2d 168, 172 (5th Cir. 1986) ("A good faith standard protects the

26    jurisdiction integrity of the bankruptcy courts by rendering their powerful … weapons … available

27    only to debtors and creditors with 'clean hands'"); *In re Marshall*, 721 F.3d at 1048 ("[T]he courts

28    may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

the reorganization provisions.'"); *Burgess*, 2005 U.S. Dist. LEXIS 42099, at *6 (courts may consider

debtor's prior conduct in reaching a finding of bad faith). Indeed, as discussed below, the District

Court flagged certain pre-petition conduct as compelling evidence of bad faith.

*Burgess*, *supra*, sets forth the following factors that the courts generally consider in evaluating

whether bad faith is present:

> whether the debtor has few or no unsecured creditors; whether the debtor has filed
> a previous bankruptcy petition; the prior conduct of the debtor; whether the petition
> permits the debtor to evade court orders; whether the petition was filed on the eve
> of foreclosure or in the face of other actions adverse to the interests of the debtor;
> and any other factors that evidence an intent to abuse the judicial process.

*Burgess*, 2005 U.S. Dist. LEXIS 42099, at *5-6. Notably, the final, catch-all factor permits the court

to consider other circumstances specific to the facts of the case. Significantly, the determination of

bad faith "depends on an amalgam of factors and not upon a specific fact." *Marshall*, 403 B.R. at

690; *see also In re Sylmar Plaza, LP.*, 314 F. 3d 1070, 1074 (9th Cir. 2002) (the ultimate

determination of good/bad faith is based on the entirety of the circumstances). While filing a

bankruptcy petition under the weight of a significant judgment is not unusual, such a filing can

evidence bad faith where a debtor is financially stable and will not be rendered insolvent by the

judgment. *In Re STL Carbon Corp.*, 200 F.3d 154, 164 (3d Cir. 1999). The same is true here where

Casden had been and is still living off his Trust that consists of at least $15 million. Sullivan Decl.,

Ex. B p. 168:17-18.

First, the two-party nature of this bankruptcy favors conversion. *See Sunshine Group, LLC v.*

*City of Dana Point (In re Sunshine Group, LLC)*, 2020 Bankr. LEXIS 1000, at *18 (9th Cir. April

10, 2020) ("A filing may also be in bad faith it is 'an apparent two-party dispute that can be resolved

outside of the Bankruptcy Court's jurisdiction"); *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604,

616 (9th Cir. BAP Dec. 12, 2014) ("Typical bad faith two-party dispute cases may involve delays on

the eve of trial (litigation tactics), forum shopping, new-debtor syndrome (special purpose entities),

repeat filers, and repeatedly delayed foreclosure sales"). With its $6,194,877.38 claim, MET is by far

Casden's largest unsecured creditor and holds approximately 69.22% of the unsecured debt. Doc. 26,

46. Indeed, aside from $2,070,000 in loans from Northern Trust, the only other substantial unsecured

creditor is Aria Resort & Casino in the amount of $300,000 for Casden's gambling debt. *Id.* The

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  remaining unsecured creditors are either Casden's family or close friends and credit card companies.

2  *Id.* Thus, this is not a case involving a debtor struggling under substantial and adverse obligations

3  among numerous, varied creditors. *See Mahmood v. Khatib*, 2017 Bankr. LEXIS 724, at *19 (9th Cir.

4  Mar. 17, 2017) (holding "while there are … maybe a couple of unsecured creditors … ultimately it

5  really appears to me that this is a dispute between the debtor" and the judgment creditor and,

6  moreover, the issues do not require "the bankruptcy's court's special expertise"); *St. Paul Self Stor.*

7  *LP v. Port Auth. (In re St. Paul Self Stor. LP)*, 185 B.R. 580, 582 (9th Cir. BAP 1995) (finding it was

8  a "classic example of a bankruptcy petition being filed, not to reorganize, but to remove a two party

9  dispute to bankruptcy court to delay and frustrate a creditor" because, in part, the timing was

10  suspicious, movant was the primary creditor and debtor lacked creditors "other than insiders and its

11  own professionals").

12      Second, the totality of the conduct here, combined with Debtor's dishonest conduct, both pre-

13  and post-petition, warrant conversion. MET obtained its Judgment against Casden because the

14  District Court expressly found that Casden made deliberately and intentionally false statements

15  suggesting, among other things, that Celliant is FDA approved, determined, endorsed or recognized,

16  which it is not and Casden intentionally caused Hologenix to breach its Settlement Agreement with

17  MET. *See* Sullivan Decl., Exs. M, N. Even during this bankruptcy, Casden misled this Court into

18  believing that he had to pay an exorbitant amount of support to his son's mother when he had custody

19  of his son 50% of the time, leading this Court to acknowledge his lack of candor. Doc. 197 at 35:23-

20  36:10. Casden similarly misled this Court when he defended his need to pay an exorbitant combined

21  $11,000 for two separate beachfront apartments in Malibu for himself and his father, which was only

22  necessary because he wanted his privacy to have romantic encounters. Sullivan Decl., Ex. B, Tr.

23  136:21-137:6.[18] Indeed, even Casden's schedules are riddled with errors, and he admitted that he

24  plugged in random numbers for the values of his personal property and jewelry, neither of which does

25  he understand the value. *Id.* at 246:14-17 (responding "I honestly have no idea. I'd be guessing,"

26

---

27  [18] After this Court denied his Request for Exemption, Casden immediately ceased making any and all payments for his father's day to day living further evidencing that these were not true necessities and that he prioritizes his and his

28  family's desires for beachfront living etc. over the interests of his creditors.

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  when asked about the value of his coin collection).[19] Moreover, Casden's failure to amend the

2  schedules even after admitting that the values in the schedules (on which the liquidation analysis is

3  based) lack any basis in fact evidences pervasive bad faith.

4      Third, Casden has repeatedly represented to this Court that his Trust is outside the Estate, yet

5  the Trust paid a substantial portion ($590,000) of his counsel's legal fees and expenses as well as

6  additional contributions on his behalf to Hologenix and to a pre-petition investment. Clearly both

7  cannot be true. Casden, once again, has been dishonest with the Court.

8      Fourth, by Casden's own admission, this bankruptcy was an attempt to impede MET from

9  collecting on the Final Judgment or obtaining a lien on Casden's assets without the need to post a

10  bond by service of the Order Requiring an Appearance. *See* Sullivan Decl., Ex. B, Tr. 60:4:15. Such

11  litigation tactics are not permitted. *See In re Karum Group, Inc.*, 66 B.R. 436, 438 (Bankr. W.D.

12  Wash. 1986) ("… a debtor may not use a Chapter 11 filing as a litigation tactic to avoid the posting

13  of a supersedeas bond."); *In re Smith*, 58 B.R. 448, 450 (Bankr. W.D. Ky.1986) (a Chapter 11 filing

14  may not be used as the functional equivalent of a supersedeas bond.); *In re Wally Findlay Galleries*

15  *(New York), Inc.,* 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) ("It is clear that the debtor did not file its

16  petition to reorganize, but rather as a litigating tactic. … This court should not, and will not, act as a

17  substitute for a supersedeas bond of state court proceedings."). Indeed, Casden also testified that if

18  he was able to post a bond today, he would voluntarily withdraw the bankruptcy. Sullivan Decl., Ex.

19  B, Tr. 109:9-19.

20      Finally, as this Court has previously found, Casden's ability to confirm the Casden Plan

21  depends in significant part on Hologenix's ability to have a plan confirmed after the Ninth Circuit

22  decides the fate of its current plan, which will take many months to unfold (if not years), with no

23  guarantee of a favorable outcome for Hologenix. In fact, even if Hologenix prevails in the instant

24  appeal (and MET believes it will not), it is inconceivable that the same plan proposed in 2022 could

25  simply be effectuated in 2025 or 2026, particularly when there are serious feasibility concerns given

26

27  [19] Casden explains that he filled out the petition within an hour because he was rushing to the bankruptcy court to ensure that MET did not serve its order requiring appearance and obtain a lien on his personal assets. Sullivan Decl., Ex. B, Tr.

28  at 246:20-24. This explanation is nonsensical because even if MET had served the order and obtained a lien, it would have been avoidable pursuant to 11 U.S.C. § 547 as long as Casden filed for bankruptcy within 90 days.

1  that Casden has had to infuse $1.3 million into Hologenix since 2023. Even if Casden manages to

2  clear those significant hurdles, the Casden Plan as currently constituted is patently unconfirmable for

3  the reasons stated in MET's objection to the Casden D.S. *See* Doc. 131. Under the circumstances,

4  cause exists under § 1112(b)(4) to convert this case to Chapter 7 or appoint a trustee.

5  **IV.    CONCLUSION**

6        It is clear that neither this Court nor creditors can trust Casden as an Estate fiduciary given

7  his history of gross mismanagement, dishonesty, and continued prioritization of his own self-interest.

8  As such, there is ample "cause" for immediate removal of Casden as a debtor in possession.  While

9  MET submits that the standard for conversion of this case under section 1112(b) clearly is met, the

10  Court should appoint a Chapter 11 trustee, who can independently determine whether conversion to

11  Chapter 7 better serves the interests of the Estate and creditors.

12        For all of the foregoing reasons, MET respectfully requests that the Court grant the Motion.

13  DATED:  October 8, 2025          WHITE AND WILLIAMS LLP

14

15

16                                    By:      */s/ Nicole A. Sullivan*
                                          NICOLE A. SULLIVAN (pro hac vice)
17                                        THOMAS E. BUTLER (pro hac vice)
                                          Attorneys for Creditor Multiple Energy
18                                        Technologies, LLC

19

20  DATED:  October 8, 2025          ELKINS KALT WEINTRAUB REUBEN
                                    GARTSIDE LLP
21

22

23                                    By:      */s/ Roye Zur*
                                          ROYE ZUR
24                                        LAUREN GANS
                                          Attorneys for Creditor Multiple Energy
25                                        Technologies, LLC

26

27

28

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

5727930

MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11
TRUSTEE

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10345 W. Olympic Blvd., Los Angeles, CA 90064

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE, OR ALTERNATIVELY, CONVERSION TO CHAPTER 7; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 8, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) October 8, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Barry Russell
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

Theodora Oringher PC
55 Anton Blvd 9th Flr
Costa Mesa, CA 92626

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 8, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 8, 2025 | Lauren B. Wageman | */s/ Lauren B. Wageman* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Shraddha Bharatia**    notices@becket-lee.com
- **Joseph Boufadel**    jboufadel@salvatoboufadel.com,
  Gsalvato@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Thomas E Butler**    butlert@whiteandwilliams.com,
  sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com
- **Aaron E. De Leest**    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **John-Patrick M Fritz**    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com
- **Matthew Grimshaw**    mgrimshaw@marshackhays.com,
  mgrimshaw@ecf.courtdrive.com;alinares@ecf.courtdrive.com
- **Jeff D Kahane**    jkahane@skarzynski.com, dahn@ecf.courtdrive.com
- **Sweeney Kelly**    kelly@ksgklaw.com
- **Wendy A Locke**    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- **Betty Luu**    bluu@duanemorris.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Allison C. Murray**    acmurray@swlaw.com, kcollins@swlaw.com
- **William M Noall**    wnoall@gtg.legal, bknotices@gtg.legal
- **Kurt Ramlo**    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email
- **Arjun P Rao**    arjun.rao@morganlewis.com, kathleen.rosello@morganlewis.com
- **Michael B Reynolds**    mreynolds@swlaw.com, kcollins@swlaw.com
- **Gregory M Salvato**    gsalvato@salvatoboufadel.com,
  calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Nicole Sullivan**    sullivann@whiteandwilliams.com,
  vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com
- **John N Tedford**    JNT@LNBYG.com, jnt@ecf.courtdrive.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **David Wood**    dwood@marshackhays.com,
  dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com
- **Roye Zur**    rzur@elkinskalt.com,
  lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                    **F 9013-3.1.PROOF.SERVICE**