ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
ROYE ZUR, State Bar No. 273875
  rzur@elkinskalt.com
LAUREN N. GANS, State Bar No. 247542
  lgans@elkinskalt.com
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Nicole A. Sullivan (pro hac vice)
  sullivann@whiteandwilliams.com
Thomas E. Butler (pro hac vice)
  butlert@whiteandwilliams.com
WHITE AND WILLIAMS LLP
7 Times Square - Suite 2900
New York, New York 10036
Telephone: (212) 631-4420

*Attorneys for Creditor Multiple Energy Technologies, LLC*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>SETH HALDANE CASDEN,<br><br>Debtor. | Case No. 2:23-bk-16904-BR<br><br>Chapter 11<br><br>Hon. Barry Russell<br><br>**REPLY IN SUPPORT OF MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE, OR ALTERNATIVELY, CONVERSION TO CHAPTER 7**<br><br>**Hearing Date & Time:**<br>Date:    November 18, 2025<br>Time:    10:00 a.m.<br>Place:    Courtroom 1668<br>           255 E. Temple St.<br>           Los Angeles, CA 90012 |

5753589

1

51038187v.1

Multiple Energy Technologies, LLC ("MET") hereby submits this Reply in support of its motion (the "Motion") for an order appointing a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a) or, alternatively, converting the above-captioned case to Chapter 7 pursuant to 11 U.S.C. § 1112(b)(1).

## I.    INTRODUCTION

The opposition ("Opp.") filed by Seth Haldane Casden ("Casden") only confirms what MET's Motion already made clear: this case will not move forward so long as Casden remains in control. The record demonstrates a pattern of unauthorized post-petition transfers, nondisclosure, subsequent false statements, and persistent losses – all of which constitute "cause" for removal of Casden as debtor-in-possession under 11 U.S.C. §§ 1104(a) or 1112(b). Rather than addressing these facts, Casden offers shifting explanations, contradictory declarations, and conclusory, unsupported statements denying mismanagement.  He fails entirely to meaningfully address MET's showing of the continuing diminution of the estate, relying instead on bare denials and self-serving assertions that are contradicted by the record.

Casden's conduct has resulted in the ongoing depletion of estate assets and has made meaningful rehabilitation impossible.  His misuse of his Trust to fund favored obligations and personal litigation, his relentless pursuit of appeals at creditor expense, and his disregard for disclosure and fiduciary duties make clear that a neutral trustee is essential.  Only an independent fiduciary can end the waste, restore transparency, and determine the best course of action for bringing finality to this bankruptcy case.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II. ARGUMENT

### A. Casden's Unauthorized Post-Petition Transfers, and Subsequent Dishonesty, Mandate Appointment of a Trustee

#### 1. Casden's Unauthorized Post-Petition Transfers to Hologenix Constitute "Cause" for Removal of Casden as Debtor-in-Possession

In its Motion, MET demonstrated that Casden's $650,000 in unauthorized and undisclosed post-petition transfers to Hologenix constitute independent and sufficient "cause" mandating the appointment of a Chapter 11 trustee or conversion of the case to Chapter 7. *See*, *e.g.*, *In re Hoyle*, 2013 WL 210254, at *12 (Bankr. D. Idaho Jan. 17, 2013) (finding "gross mismanagement" where individual debtor made an unauthorized transfer of estate property and subsequently failed to make a clear and express disclosure of what he had done); *In re Grasso*, No. 12-1063-mdc, 2012 WL 13168488, at *3 (Bankr. S.D.N.Y. Oct. 16, 2012) ("The Debtor's gross mismanagement of estate assets is evidenced by . . . [t]he Debtor's failure to disclose his receipt and use of estate assets . . . [and] . . . [t]he Debtor's postpetition transfer of estate assets to fund the operation of entities in which he holds an ownership interest . . . ."); *In re PRS Ins. Grp., Inc.*, 274 B.R. 381, 385 (Bankr. D. Del. 2001) ("Diversion of funds and misuse of corporate assets constitute fraud or dishonesty sufficient to warrant appointment of a trustee under section 1104(a)(1)."); *In re Intercat, Inc.*, 247 B.R. 911, 923 (Bankr. S.D. Ga. 2000) (the diversion of substantial corporate assets to the debtor's management or to other corporations owned by management constituted mismanagement at best and fraud or dishonesty at worse; either warrants appointment of a trustee); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 527 (Bankr. E.D.N.Y. 1989) ("[U]nauthorized postpetition transfers of estate assets constitute grounds for appointment of a Chapter 11 trustee.").

Instead of accepting responsibility for his improper actions, Casden argues that the transfers were "fully disclosed" and, in any event, not transfers by him, but instead "direct capital contributions to Hologenix as a capital investments made to protect the Spendthrift Trust's previous investments in Hologenix." Declaration of Seth Casden ("Casden Decl."), ¶ 17. Casden's statements are at best misleading and at worst patently false.

First, the transfers by Casden to Hologenix were not "fully disclosed." Casden failed to

disclose them in any of his Monthly Operating Reports. Even when MET specifically asked Casden's counsel on July 25, 2025, to supplement prior Rule 2004 discovery responses with documents relating to "distributions from the Trust to Hologenix," Casden's counsel provided limited information on certain Trust distributions but <u>omitted</u> any mention of the $650,000 transferred to Hologenix. That MET later discovered the transfers only because they appeared in Hologenix's own monthly operating reports does not transform nondisclosure into disclosure. Whether Casden's omission was deliberate or negligent is immaterial. Either constitutes "cause."

<u>Second</u>, the underlying premise of Casden's excuse – that the Trust is an investor in Hologenix – is verifiably false. Simply put, the Trust is not a member of Hologenix. Hologenix's capitalization table, submitted with its June 2022 plan of reorganization, confirms as much. [*See* Docket No. 657 in Case No. 2:20-bk-13849-BR, Ex. 5.] No capital contributions or equity investments have been made into Hologenix since that filing, except by Casden personally:

- $200,000 made by Casden personally on July 12, 2023 [Docket No. 900 in Case No. 2:20-bk-13849-BR, at ECF 10 of 39 and 27 of 39];
- $100,000 made by Casden personally on September 13, 2023 [Docket No. 903 in Case No. 2:20-bk-13849-BR, at ECF 10 of 38 and 27 of 38]; and
- $50,000 and $300,000 made by Casden personally on October 12 and 17, 2023, respectively [Docket No. 917 in Case No. 2:20-bk-13849-BR, at ECF 10 of 40 and 28 of 40].

Each one of Casden's transfers is denominated as "owner's equity" in Hologenix's operating reports. Casden's records confirm that he funded these equity contributions into Hologenix with money from the Trust. That Casden later skipped the intermediate step of routing the money through his personal account (perhaps with an intent to conceal the transfer) does not magically transform the Trust into a member of Hologenix.

Finally, Casden's sworn (and false) claim that the unauthorized and undisclosed transfers to Hologenix were made to "protect the Spendthrift Trust's previous investments in Hologenix" directly contradicts his and his Trust Adviser's statement that "[t]he Spendthrift Trust cannot distribute funds to anyone other than the Debtor . . . ." Opp. at 9:24-25; Declaration of Joel Tucker ("Tucker Decl."), ¶ 6. Moreover, Hologenix's MOR specifically listed this transfer as a member's equity contribution for Seth Casden and does not identify the Trust as a member. [*See* Docket No.

1068 in Case No. 2:20-bk-13849-BR, at ECF p. 10 of 38.]  Casden simply cannot get his story straight – can the Trust make distributions on its own behalf to protect its so-called "investments," or can it only make distributions to Casden?

> 2. **Casden's False Explanation for the Post-Petition Transfers to Hologenix Constitutes "Dishonesty" Sufficient for Removal of Casden as Debtor-in-Possession**

Casden's verifiably false explanation for the post-petition transfers – that they were not made by him, but instead by the Trust to protect its (nonexistent) equity investment in Hologenix – is itself a basis for removal of Casden as debtor-in-possession.  Section 1104 of the Bankruptcy Code provides that "cause" for appointment of a trustee includes "fraud, dishonesty, incompetence, . . . or similar cause . . . ."  11 U.S.C. § 1104(a)(1).  A debtor's unauthorized post-petition transfer, followed by the debtor's dishonesty about the transfer, can be grounds for removal of the debtor as a debtor-in-possession.  *Hoyle*, 2013 WL 210254, at *12 ("In essence, Debtor undertook actions to finesse the transfer after the fact. Additionally, even in doing so, Debtor failed to make a clear and express disclosure of what he had done, and certain of the statements made in his submissions were patently false."); *see also In re Spiegel*, 662 B.R. 666, 687 (Bankr. N.D. Ill. 2024) (appointing Chapter 11 trustee after debtor made an unauthorized post-petition transfer, offered an "after-the-fact jusitification of [his] non-compliance," and tried to cover it up); *In re Grasso*, 490 B.R. 500, 513 (Bankr. E.D. Pa. 2013) ("The Debtor's failure to disclose the opportunity to purchase the WSFS claim was exacerbated by his subsequent efforts to cover up the true nature of this transaction."); *In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 112 (Bankr. S.D.N.Y. 2008) (appointing trustee based on nondisclosure and attempted cover-up of transfer by debtor's principal).

Casden's dishonesty compounds his misconduct.  He made unauthorized transfers, failed to disclose them in operating reports, omitted them from discovery responses, and now denies them outright with an explanation that is demonstrably false.  This pattern of concealment and deception constitutes independent "cause" for removal of Casden as debtor-in-possession.[1]

---

[1] Casden argues that MET's "Judgment is disputed and the pre-petition conduct attributed to the Debtor by the District Court was done in error," and thus, "[a] trustee should not be appointed in the bankruptcy case based on the District

### B. Casden Fails to Refute MET's Showing that Casden's Conduct Has Caused Continuing Diminution of the Estate and the Absence of a Likelihood of Rehabilitation

Casden fails to meaningfully address, let alone refute, MET's showing that Casden's conduct has rendered the estate administratively insolvent, resulting in a substantial and continuing loss and diminution of the estate, and that there is no likelihood of rehabilitation. Specifically, MET has shown that Casden has consistently operated at a loss of an average of $16,000 per month – not including the ongoing administrative costs of this bankruptcy case – and that Casden's egregious spending has depleted Casden's DIP account. Courts have found that a negative cash flow alone constitutes continuing diminution of the estate. *In re Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515-16 (8th Cir. 2004). MET also has shown that there is nothing to rehabilitate and that Casden has done nothing to demonstrate a reasonable path to rehabilitation.

Casden does not address these issues in his opposition (tacitly conceding each one). Instead, Casden focuses on his spending habits and argues in conclusory fashion that they are permissible because they are "consistent with prior custom and practices and lifestyle of the Debtor . . . ." Opp. at 13:17-19. Casden misses the point. That Casden's monthly expenditures during the pendency of this bankruptcy case purportedly are consistent with his pre-bankruptcy lifestyle does not make those expenditures reasonable (they are not).[2] More importantly, Casden fails to address the fact that his expenditures consistently and significantly exceed his income, resulting in a monthly loss of $16,000. This shortfall – regardless of whether it was consistent with Casden's pre-bankruptcy

---

Court's finding." Opp. at 15:22-23. This argument – like many offered by Casden – is not based in truth or fact. While Casden disputes the amount of the judgment and whether certain defenses preclude holding him liable for tortious interference, he has not appealed either the jury's verdict or the District Court's findings that MET proved that Casden violated the Lanham Act. [Docket No. 36.1 in 9th Circuit Appeal No. 24-4691, at 1 ("Casden does not challenge the finding of liability under the Lanham Act or MET's state law claims, or imposition of the injunction.").] That Casden has been adjudicated a false advertiser and intentional wrongdoer certainly can and should weigh in this Court's decision-making. *See* 11 U.S.C. § 1104(a)(1) (cause includes fraud, dishonesty, etc. "either before or after the commencement of the case").

[2] Casden argues in vague and conclusory fashion that "any issues with respect to [his] spending are being corrected," Opp. at 16:4, but does not explain how these issues will be corrected, or whether such purported corrections will result in Casden no longer losing money each month. The time for curbing his expenses was at the start of the bankruptcy, not two years later after he already (and continues to) depleted the estate.

1  practice that included significant annual distributions from his Trust that suddenly ceased when he
2  filed for bankrutpcy until it was necessary in August 2025 to prevent the DIP account from going
3  in the red – constitutes a continuing loss or diminution of the estate.  *See Hassen Imps. P'ship v.*
4  *City of W. Covina (In re Hassen Imps. P'ship)*, 2013 WL 4428508, at *13-14 (9th Cir. BAP Aug.
5  19, 2013) (finding operating losses of ~$80,000 per month, mounting administrative expenses and
6  no guarantee of a substantial cash infusion evidenced continuing loss or diminution of the estate);
7  *In re Pinnacle Foods of Cal. LLC*, 2025 WL 951650, at *4-6 (Bankr. E.D. Cal. Mar. 27, 2025)
8  (holding "cause" existed to remove debtors from possession based on inconsistent and negative cash
9  flow and lack of administrative solvency given that the case continued to teeter on administrative
10  insolvency while accruing professional fees).

11        Casden also offers no credible plan for rehabilitation.  "[R]ehabilitation does not necessarily
12  denote reorganization, which could involve liquidation. Instead, rehabilitation signifies something
13  more, with it being described as 'to put back in good condition; re-establish on a firm, sound basis."
14  *In re Creekside Senior Apts., L.P.*, 489 B.R. 51, 61 (6th Cir. BAP 2013).   "Rehabilitation
15  'contemplates the successful maintenance of the debtor's business operations.'"  *In re Vallambrosa*
16  *Holdings, LLC*, 419 B.R. 81, 89 (Bankr. S.D. Ga. 2009).  Casden has no disposable income and no
17  viable funding source for his plan.  Contrary to Casden's unsupported statement, the plan he has
18  proposed is not "confirmable on its face."  Opp. at 19:14-15.  For one, the funding source for the
19  plan – a loan from a third party or $1,000,000 distribution from the Trust – explicitly was rejected
20  by the then-Trust Adviser, Alan Terry Leavitt.  [*See* Docket No. 130, *Alan Terry Leavitt's Response*
21  *to Debtor's Disclosure Statement for Chapter 11 Plan of Reorganization Dated January 23, 2024*,
22  at 2:7-9 ("Debtor's [proposal for funding his plan] is contrary to legal authority and the terms of the
23  Spendthrift Trust . . . .").]  Additionally, the Court expressed serious skepticism regarding Casden's
24  plan (and the improper classification embodied therein) at the hearing on his disclosure statement
25  in March 2024.  [*See* Docket No. 151 at ECF pp. 6-7 of 60.]  Other than baldly stating that "there is
26  a reasonable likelihood that the Debtor's plan will be confirmed within a reasonable time," Opp. at
27  19:17-18, Casden does not and cannot offer any details.
28

5753589

7

REPLY IN SUPPORT OF MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A
CHAPTER 11 TRUSTEE, OR ALTERNATIVELY, CONVERSION OF THE CASE TO CHAPTER 7

51038187v.1

### C. Casden's Use of the Trust Is a Blatant Abuse of the Bankruptcy System

Casden's use of the Trust is a blatant abuse of the bankruptcy system. Casden serially spends more money than he makes, replenishes his DIP account with funds from a purportedly "spendthrift" trust, pays his administrative creditors – *i.e.*, lawyers – directly from the Trust (despite contending that the Trust may not be used to pay creditors), and continues languishing in Chapter 11 while pursuing numerous appeals without posting a bond and without showing any intention of moving this bankruptcy case to resolution. Casden makes a mockery of the bankruptcy process.

Casden's straw man arguments regarding the Trust's purported exclusion from the estate are irrelevant. MET's Motion is not the opportunity or method for the Court to determine whether the Trust is a true spendthrift, or whether Casden's abuse of the Trust renders its spendthrift clause illusory. Rather, the point simply is that Casden has selectively relied on the purported spendthrift nature of the Trust to claim that it is not and cannot form a part of his bankruptcy estate (because "it cannot distribute any funds to anyone other than the Debtor, including and especially paying the Debtor's creditors"), Opp. at 9:24-26, while simultaneously acknowledging that the Trust paid – at his request and direction – hundreds of thousands of dollars to administrative creditors of his estate. And while Casden argues that the payments from the Trust to certain of his creditors was "necessary for the Debtor to be able to proceed with the appeals of the adverse judgment and with pursuing a plan," Opp. at 10:18-21, this does not explain why Casden caused the Trust to pay hundreds of thousands of dollars to his former counsel, the Danning Gill law firm, which no longer exists and necessarily is no longer providing any services to Casden.

Casden has selectively invoked the Trust's "spendthrift" nature when convenient and disregarded it when advantageous. His contradictory positions and irreconcilable conflict of interest underscore his unfitness to serve as a fiduciary.

### D. Casden's Own Opposition Confirms the Need for a Trustee

It is clear from Casden's conduct, confirmed by his opposition, that a trustee is necessary to move this case forward. Casden has spent over a million dollars in professional fees that could have gone to creditors simply to pursue seemingly-endless appeals and avoid having to pay anything to MET. It is clear that Casden is motivated solely by animus towards MET and has no present

intention to move this case forward. Under these circumstances, a trustee is particularly necessary. "At the outset, a trustee can stand in the Debtor's shoes and survey the estate free from the complex, familial, reflexive, and often acrimonious relationships among the Debtor and the parties in interest who have been most active in the bankruptcy case . . . ." *In re Taub*, 427 B.R. 208, 230 (Bankr. E.D.N.Y. 2010). "In addition, a trustee can manage the estate's property without the constraints that result from the contentious litigation pending in this Court and elsewhere. A trustee can fulfill the Debtor's fiduciary obligations to the estate and its creditors without any prospect of favoritism or animus." *Id.* Likewise, the appointment of a trustee would "unfreeze this bankruptcy case and . . . permit and foster the negotiations between interested pasrties which generally occurs in bankruptcy cases." *In re Bellevue Place Assocs.*, 171 B.R. 615, 625 (Bankr. N.D. Ill. 1994).

Casden's own statements underscore the point. In his opposition, Casden states that "MET does not argue for the dismissal of [the] bankruptcy case," and claims this shows that "MET's objective is solely to interrupt the prosecution of the pending appeals[3] . . . by removing the Debtor from his management of the individual bankruptcy estate and, through his company, the Hologenix bankruptcy estate." Opp. at 9:2-6. In other words, he concedes that a trustee would do what Casden will not: end the obstruction and move this case to conclusion.

///
///
///
///
///
///
///
///
///

---

[3] Notably, the Hologenix appeals are fully submitted and are awaiting a date for argument in February or March 2026. Casden's appeal would have been fully submitted but he has requested a streamlined extension to file his reply brief that is pending before the Ninth Circuit. And Casden's appellate counsel submitted an application for fees of $257,242 just for his opening brief! [Docket No. 382.]

5753589

9

REPLY IN SUPPORT OF MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A
CHAPTER 11 TRUSTEE, OR ALTERNATIVELY, CONVERSION OF THE CASE TO CHAPTER 7

51038187v.1

## III. CONCLUSION

For all of the foregoing reasons, and those stated in the Motion, MET respectfully requests that the Court grant the Motion.

DATED: November 11, 2025        WHITE AND WILLIAMS LLP

By:    */s/ Nicole A. Sullivan*
NICOLE A. SULLIVAN (pro hac vice)
THOMAS E. BUTLER (pro hac vice)
Attorneys for Creditor Multiple Energy Technologies, LLC

DATED: November 11, 2025        ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

By:    */s/ Roye Zur*
ROYE ZUR
LAUREN GANS
Attorneys for Creditor Multiple Energy Technologies, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10345 Olympic Boulevard, Los Angeles, California 90064.

A true and correct copy of the foregoing documents entitled (*specify*): **REPLY IN SUPPORT OF MOTION OF MULTIPLE ENERGY TECHNOLOGIES, LLC FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE, OR ALTERNATIVELY, CONVERSION TO CHAPTER 7** will be served or were served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 11, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Shraddha Bharatia**    notices@becket-lee.com
- **Joseph Boufadel**    jboufadel@salvatoboufadel.com, Gsalvato@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Thomas E Butler**    butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com
- **Aaron E. De Leest**    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **John-Patrick M Fritz**    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com
- **Matthew Grimshaw**    mgrimshaw@marshackhays.com, mgrimshaw@ecf.courtdrive.com;alinares@ecf.courtdrive.com
- **Jeff D Kahane**    jkahane@skarzynski.com, dahn@ecf.courtdrive.com
- **Sweeney Kelly**    kelly@ksgklaw.com
- **Wendy A Locke**    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- **Betty Luu**    bluu@duanemorris.com, betty-luu-4381@ecf.pacerpro.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Allison C. Murray**    acmurray@swlaw.com, kcollins@swlaw.com
- **William M Noall**    wnoall@gtg.legal, bknotices@gtg.legal
- **Kurt Ramlo**    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email
- **Arjun P Rao**    arjun.rao@morganlewis.com, kathleen.rosello@morganlewis.com
- **Michael B Reynolds**    mreynolds@swlaw.com, kcollins@swlaw.com
- **Gregory M Salvato**    gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Nicole Sullivan**    sullivann@whiteandwilliams.com, vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com
- **John N Tedford**    JNT@LNBYG.com, jnt@ecf.courtdrive.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **David Wood**    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com
- **Roye Zur**    rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **November 11, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 11, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 11, 2025 | Lisa Masse | */s/ Lisa Masse* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**